## Knox *et al. v.* Nall *et al.*

### *Bill in Equity to Redeem Mortgaged Property.*

1. *Credit on usurious debt by mortgagee.*—When the mortgagee receives mortgaged property from the mortgagor, to be credited at an agreed price on the mortgage debt, a subsequent abatement of the mortgage debt, on bill filed to redeem, on account of usury, will not entitle the mortgagee to a corresponding reduction of the credit allowed.

APPEAL from Pike Chancery Court.

Heard before the Hon. JNO. A. FOSTER.

This was a bill filed by Jas. P. Nall and others to redeem certain mortgaged property, claiming that there was usury in the debt secured by the mortgage, and that the debt, purged of usury, had been paid. The bill avers that on March the first, 1881, complainants executed and delivered their promissory note for eleven thousand dollars to respondents, C. J. Knox and others, who are appellants here, and executed a mortgage on certain real estate in the town of Troy to secure the same; but that their real indebtedness, exclusive of usurious interest, was only about seven thousand dollars. It further shows that complainants conveyed the old Central warehouse to the mortgagees, as a payment on said debt, for which they were to be credited with five thousand five hundred dollars on the 27th of August, 1881; and that on the 28th of July, 1882, by sale to mortgagees of the new Central warehouse, it was agreed that complainants' debt should be credited with the further sum of six thousand eight hundred and ninety-five and 65-100 dollars. The bill sets out the various transactions constituting the consideration of their said note for eleven thousand dollars, and alleges that interest thereon had been charged by respondents at 18 *per cent. per annum.*

Respondents, in their answer, do not deny the usurious interest charged, but aver that complainants had executed a deed to C. J. Knox to said new Central warehouse on a recited consideration of six thousand dollars; but the record fails to show that the deed was offered in evidence. Respondents further claimed that the credit of $6,895.95 alleged to have been

[Knox et al. v. Nall et al.]

agreed upon, on account of the new Central warehouse, was a part of the, whole mortgage debt due from complainants, and that if the whole was tainted with usury, this part of it should be scaled for usury, and complainants be allowed only such credit as should remain after disallowance of the usury in said sum. The cause was submitted for reference to the register, to ascertain and . state the account between the parties. The register, in his report, allowed a credit upon complainants' debt of six thousand eight hundred and ninety-five and 95-100 dollars on account of the new Central warehouse, and found the balance due respondents, seven hundred and sixty-five and 78-100 dollars. To this report respondents filed their exceptions, which were overruled by the chancellor, and respondents appealed.

GARDNER & WILEY, for appellants.

N. W. GRIFFIN, and W. D. WOOD, *contra.*

STONE, C. J.—The present bill was filed by appellees to redeem mortgaged real estate, and sets up usury in the debt secured, in part reduction of the amount claimed by the mortgagee. What is known as the new Central warehouse was one of the pieces of property specified and conveyed in the mortgage. By private agreement, that piece of property was sold and conveyed by the mortgagors to one of the mortgagees, Knox, in consideration of a credit of six thousand eight hundred and ninety-five and 95-100 dollars, to be entered on the mortgage debt. Taking the debt at its face value, and allowing this credit upon it, there would remain due and unpaid of the mortgage liability twenty-three hundred and fifty dollars. The answer admits the usury as charged, and hence there is no controversy as to the amount of unlawful interest embraced in the note and mortgage. The real and only contention in this case is, that inasmuch as this portion of the debt was paid in property, upon an agreement to enter, in consideration thereof, the stipulated credit on the debt, it must be treated, not as a sale of the warehouse at an agreed price, but as an exchange of one for the other in the condition in which they then stood ; and that if the debt is reduced by the elimination of the usurious interest, this will lead only to a corresponding reduction in the estimated value, or purchase-price of the warehouse. The register, in stating the account, ruled against defendants on the question above presented, and they filed exceptions to his report, as follows :

" First.—They except to so much of the register's report as allows complainants a credit of six thousand eight hundred and

[Bergan v. Jeffries.]

ninety-five and 95-100 dollars, proceeds of the new Central warehouse:

"Second.—Except to so much of the register's report as shows a balance due on respondents' note and mortgage of [only?] seven hundred and sixty-five and 78-100 dollars." The chancellor overruled the exceptions, and confirmed the report.

In the note, referring to the testimony relied on in support of the said exceptions, is the following language: "Respondents rely on * * so much of the deed executed by complainants to C. J. Knox, which recites the consideration of six thousand dollars as the amount paid for the new Central warehouse." That deed is not in the record, and it is nowhere shown that it was offered in evidence. There is no note of the testimony that was submitted to the chancellor, when he made the decree of reference. We are thus left, so far as this question is concerned, to the testimony of C. J. Knox and J. P. Nall, for no other witness sheds any light on it.

There is no averment in the pleadings, nor is there any testimony, tending to show the money value of the new Central warehouse, other than the agreed sum for which credit was allowed for it. We have no *data* for affirming its value was less than that. And scrutinizing the testimony *pro* and *con*, we do not find it satisfactorily proved, that there was any agreement, express or implied, that the transaction was other than it appears on its face to have been—a purchase of the warehouse at the agreed price and value of six thousand eight hundred and ninety-five and 95-100 dollars. It results that we are not clearly convinced the chancellor erred, and his decree must be affirmed.